## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDE KYLES and DIANE TAYLOR, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>STEIN MART, INC., a Florida corporation,<br><br>     and<br><br>SOCIAL ANNEX, INC. (d/b/a ANNEX CLOUD), a Delaware corporation,<br><br>          Defendants. | Case No.: 1:19-cv-00483-CFC |

## DEFENDANT STEIN MART, INC.'S OPENING BRIEF IN SUPPORT OF ITS <u>MOTION TO DISMISS CLASS ACTION COMPLAINT</u>

OF COUNSEL:

**BAKER & HOSTETLER LLP**

Casie D. Collignon (admitted *Pro Hac Vice*)
Matthew D. Pearson (admitted *Pro Hac Vice*)
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: (303) 861-0600
Facsimile:  (303) 861-7805
ccollignon@bakerlaw.com
mpearson@bakerlaw.com

Dated:  May 10, 2019

**DLA PIPER LLP (US)**

Edward J. McAndrew (DE Bar No. 5638)
1201 North Market Street, Suite 2100
Wilmington, DE  19801-3046
Telephone: (302) 468-5700
Facsimile:   (302) 394-2341
ed.mcandrew@dlapiper.com

*Attorneys for Defendant Stein Mart, Inc.*

# **TABLE OF CONTENTS**

**Page**

I.   NATURE AND STAGE OF PROCEEDINGS ............................................................- 1 -

II.   SUMMARY OF ARGUMENT ..............................................................................- 1 -

III.   STATEMENT OF FACTS ....................................................................................- 2 -

IV.   ARGUMENT .........................................................................................................- 3 -

    A.   Plaintiffs' Claims Against Stein Mart Should Be Dismissed for Lack of Personal Jurisdiction. ..............................................................................- 3 -

        1.   Plaintiffs Have Not And Cannot Establish Specific Personal Jurisdiction. .........................................................................- 4 -

        2.   Plaintiffs Have Not And Cannot Establish General Personal Jurisdiction. .........................................................................- 5 -

    B.   Plaintiffs Have Failed To State A Claim Against Stein Mart. ...........................- 7 -

        1.   Plaintiffs Have Failed To Allege That They Suffered Any Actual Damages As A Result Of Stein Mart's Alleged Conduct And, Therefore, Have Failed To Adequately Plead Negligence, Negligence *Per Se*, and Breach Of Implied Contract Claims. ...................................- 8 -

        2.   The Economic Loss Doctrine Bars Plaintiffs' Negligence and Negligence Per Se Causes of Action. ....................................................- 12 -

        3.   Plaintiffs' Unjust Enrichment Claim Fails...........................................- 14 -

        4.   Kyles Has Failed to Allege That She Suffered an Ascertainable Loss of Money or Property as Required by the MMPA...............................- 15 -

        5.   Taylor's SCUTPA Claim Should Be Dismissed. .................................- 17 -

        6.   Taylor's Class Allegations Under SCUTPA Must Be Dismissed. ........- 20 -

V.   CONCLUSION.....................................................................................................- 20 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Source Bank v. Merritt*,
  759 F. Supp. 2d 505 (D. Del. 2011)..........................................................................4

*Argueta v. U.S. Immigration & Customs Enf't*,
  643 F.3d 60 (3d Cir. 2011)......................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................7

*Bahringer v. ADT Sec. Servs., Inc.*,
  942 F. Supp. 2d 585 (D.S.C. 2013).........................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................7

*Bessinger v. Food Lion, Inc.*,
  305 F. Supp. 2d 574 (D.S.C. 2003), *aff'd sub nom. Bessinger v. Food Lion,
  LLC*, 115 F. App'x 636 (4th Cir. 2004) .................................................................17

*BP Chems. Ltd. v. Fibre Corp.*,
  229 F.3d 254 (3d Cir.2000)......................................................................................4

*Brasby v. Morris*,
  No. C.A. 05C-10-022-RFS, 2007 WL 949485 (Del. Super. Ct. Mar. 29, 2007)....13

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
  137 S. Ct. 1773 (2017).............................................................................................4

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..................................................................................................4

*Carlsen v. GameStop, Inc.*,
  833 F.3d 903 (8th Cir. 2016) ..................................................................................15

*Corona v. Sony Pictures Entm't, Inc.*,
  No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ..........12

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014).........................................................................................4, 5, 6

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016)......................................................................................7

*Fejzulai v. Sam's W., Inc.*,
   205 F. Supp. 3d 723 (D.S.C. 2016) .................................................................20

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ........................................................................6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011) ............................................................................4, 5, 7

*In re Google Android Consumer Privacy Litig.*,
   No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ...............12

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   613 F. Supp. 2d 108, 167 (D. Me. 2009*), rev'd on other grounds sub nom.*
   *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) .........................8, 9

*Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*,
   403 S.C. 623 (2013) ......................................................................................17

*Helicopteros Nacionales de Colombia v. Hall*,
   466 U.S. 408 (1984) .......................................................................................4

*Int'l Fid. Ins. Co. v. Mattes Elec., Inc.*,
   No. CIV.A. 99C-10-065WCC, 2002 WL 1400217 (Del. Super. Ct. June 27,
   2002) ....................................................................................................12, 13

*Interim Healthcare, Inc. v. Spherion Corp.*,
   884 A.2d 513 (Del. Super. Ct.), aff'd, 886 A.2d 1278 (Del. 2005) ......................8

*Irwin v. Jimmy John's Franchise, LLC*,
   175 F. Supp. 3d 1064 (C.D. Ill. 2016) ...........................................................15

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
   926 F.2d 1406 (3d Cir. 1991) .........................................................................7

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ..........................................................9, 15, 16, 17

*Lechliter v. Delaware Dep't of Nat. Res. & Envtl. Control*,
   No. CV 7939-VCG, 2015 WL 9591587 (Del. Ch. Dec. 31, 2015), aff'd, 146
   A.3d 358 (Del. 2016) .....................................................................................8

*Longenecker-Wells v. Benecard Servs. Inc*,
   658 F. App'x 659 (3d Cir. 2016) ....................................................................13

*Malik v. Cabot Oil & Gas Corp.*,
   710 F. App'x 561 (3d Cir. 2017) ....................................................................5, 6

*Mann v. Brenner*,
  375 F. App'x 232 (3d Cir. 2010) ...................................................................7

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012)........................................................................19

*In re Michaels Stores Pin Pad Litig.*,
  830 F. Supp. 2d 518 (N.D. Ill. 2011) ........................................................13

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .........................................................................14

*New Haverford P'ship v. Stroot*,
  772 A.2d 792 (Del. 2001) .............................................................................8

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)..........................................................................7

*Pleasant v. Noble Fin. Corp.*,
  54 F. Supp. 3d 1071 (W.D. Mo. 2014) ..................................................15, 16

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
  819 F.2d 434 (3d Cir.1987)...........................................................................3

*Registered Agents, Ltd. v. Registered Agent, Inc.*,
  880 F. Supp. 2d 541 (D. Del. 2012)..............................................................3

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011)..........................................................................10

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D.D.C. 2014) ...............................................................15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ..........................................................9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014), order corrected, No. 11MD2258 AJB
  (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014) ............................13

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
  533 F.3d 162 (3d Cir. 2008)........................................................................13

*Stalvey v. Am. Bank Holdings, Inc.*,
  No. 4:13-CV-714, 2013 WL 6019320 (D.S.C. Nov. 13, 2013)..................20

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
  2018 WL 1189327 (D. Minn. Mar. 7, 2018) .....................................9, 11, 14

iv

*In re Target Corp. Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) ...................................................................11

*In re TD Bank, N.A.*,
   150 F. Supp. 3d 593 (D.S.C. 2015)........................................................................20

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
   No. M 07–1827 SI, 2011 WL 4345446 (N.D.Cal. Sept. 15, 2011) ........................16

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
   735 F.2d 61 (3d Cir.1984).......................................................................................4

*In re TJX Companies Retail Sec. Breach Litig.*,
   564 F.3d 489 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) ............13

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003).....................................................................................6

*Trierweiler v. Croxton & Trench Holding Corp.*,
   90 F.3d 1523 (10th Cir. 1996) .................................................................................6

*Williams v. Quest Diagnostics, Inc.*,
   353 F. Supp. 3d 432 (D.S.C. 2018)........................................................................17

*Wright v. Craft*,
   640 S.E.2d 486 (S.C. Ct. App. 2006).....................................................................19

*Young v. New Sewickley Twp.*,
   160 F. App'x 263 (3d Cir. 2005) ...........................................................................10

*Yunker v. Pandora Media, Inc.*,
   No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)................12

**Statutes**

Missouri Merchandising Practices Act, MO. ANN. STAT. § 407.050(1), *et seq.* ..........1, 2, 15, 16

N.J. Stat. Ann. § 56:8-19................................................................................................19

New Jersey Consumer Fraud Act ...................................................................................19

S.C. Code Ann. § 39–5–20 ............................................................................................17

S.C. Code Ann. § 39-5-140.............................................................................................20

S.C. Code Ann. § 39-5-140(a) ........................................................................................19

South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), *et seq.* ............... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ....................................................................................3, 4

Rule 8(a)(2) ...................................................................................................................................7

Rule 12(b)(6).................................................................................................................................7

## I.     NATURE AND STAGE OF PROCEEDINGS

On or about March 8, 2019, Plaintiffs Ande Kyles ("Kyles") and Diane Taylor ("Taylor") (together, "Plaintiffs") filed, on behalf of themselves and purportedly on behalf of "all others similarly situated," a complaint against Stein Mart and Defendant Social Annex, Inc. (d/b/a Annex Cloud) ("Social Annex") allegedly arising out of a cyberattack that occurred in 2017 and 2018 and that potentially impacted Stein Mart ("Data Incident"). [D.I. 1.] Plaintiffs assert six causes of action against Stein Mart. *See id.* Both Plaintiffs assert claims for (1) negligence, (2) negligence *per se*, (3) breach of implied contract, and (4) unjust enrichment. *See id.* Kyles asserts a claim for violation of the Missouri Merchandising Practices Act, MO. ANN. STAT. § 407.050(1), *et seq.* ("MMPA"). *See id.* And Taylor asserts a claim for violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), *et seq.* ("SCUTPA"). On April 4, 2019, the parties filed a stipulation, requesting that the Court continue Stein Mart's deadline to respond to the complaint to May 10, 2019. [D.I. 11]. On April 5, 2019, the Court granted the stipulation.

## II.    SUMMARY OF ARGUMENT

1.      This Court lacks personal jurisdiction over Stein Mart.

2.      Plaintiffs have failed to allege that they suffered any cognizable injury as a result of Stein Mart's alleged conduct and, therefore, have failed to adequately plead their negligence, negligence *per se*, and breach of implied contract claims.

3.      The economic loss doctrine bars Plaintiffs' negligence-based claims.

4.      Plaintiffs' unjust enrichment claim fails because Stein Mart was not unjustly enriched by any of the alleged misconduct.

5.     Kyles has failed to allege that she suffered an ascertainable loss of money or property as required by the MMPA.

6.     Taylor's SCUTPA claim fails because she has not alleged (1) that Stein Mart engaged in an unlawful trade practice; (2) that she suffered actual, ascertainable damages as a result of Stein Mart's use of the allegedly unlawful trade practice; or (3) that Stein Mart's allegedly unlawful trade practice had an adverse impact on the public interest.

7.     Taylor's class allegations under SCUTPA must be dismissed because SCUTPA does not allow for representative actions.

## III.   <u>STATEMENT OF FACTS</u>

Plaintiffs allege that their and the putative class members' "sensitive financial and personal non-public information, including but not limited to their (a) names; (b) addresses; (c) email addresses; and (d) payment card information (including, *inter alia*, card numbers, expiration dates, and security codes ('CVV numbers')) (collectively, 'Personal Information') was accessed and captured from Defendants' systems by unauthorized users…" ("Data Incident"). [D.I. 1, ¶ 1.] They allege that "[o]n or around November 13, 2018, Stein Mart sent letters to customers/consumers informing them that Annex's system was accessed by unauthorized users who were able to capture customers'/consumers' Personal Information, including payment card information entered while making online purchases on Stein Mart's website." *Id.* ¶ 3. Taylor and Kyles both allege to have received such a letter. *Id.* ¶¶ 11, 23. Taylor alleges that she used a debit card to "make purchases on Stein Mart's website, www. SteinMart.com." *Id.* ¶ 16. Kyles does not allege that she purchased anything from Stein Mart or, if she did, how and where she made the purchase. *See id.* ¶¶ 23-28.

Taylor resides in Denmark, South Carolina. *Id.* ¶ 11. She alleges that in "May 2018, [she] received a notification from Bank of America that there had been fraudulent activity on her debit card" that she had "used to make purchases on Stein Mart's website." *Id.* ¶¶ 15-16. Shortly thereafter, Bank of America cancelled her credit card and mailed Taylor a new card. *Id.* ¶ 17. Finally, Taylor alleges that "[a]lthough [she] was ultimately refunded her stolen money, as a result of being victimized by the Data Breach,…Taylor was required to spend time addressing the unauthorized transactions." *Id.* ¶ 19.

Kyles resides in Florissant, Missouri. *Id.* ¶ 23. Kyles does not allege that she suffered any type of fraudulent credit or debit card activity, or anything else that would indicate that her Personal Information was obtained and improperly used. *See id.* ¶¶ 23-28.

IV.   **ARGUMENT**

A.   **Plaintiffs' Claims Against Stein Mart Should Be Dismissed for Lack of Personal Jurisdiction.**

Under Federal Rule of Civil Procedure 12(b)(2), the court must dismiss a case when it lacks personal jurisdiction over the defendant. Fed.R.Civ.P. 12(b)(2). Pursuant to Rule 12(b)(2), a court "must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor." *Registered Agents, Ltd. v. Registered Agent, Inc.,* 880 F. Supp. 2d 541, 544 (D. Del. 2012). Once a jurisdictional defense has been raised, however, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a

Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n. 9 (3d Cir.1984).

Stein Mart is incorporated in and has its principal place of business in Florida.  [D.I. 1, ¶ 30.] "Personal jurisdiction over a nonresident defendant," such as Stein Mart here, "is proper when either specific or general jurisdiction exists." *1st Source Bank v. Merritt,* 759 F. Supp. 2d 505, 508 (D. Del. 2011). "Specific personal jurisdiction exists when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities.'" *BP Chems. Ltd. v. Fibre Corp.*, 229 F.3d 254, 259 (3d Cir.2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). General jurisdiction exists when the defendant's contacts with the forum are "continuous and systematic," whether or not the contacts relate to the litigation. *See id.* (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984)). Plaintiffs can establish neither here.

### 1. Plaintiffs Have Not And Cannot Establish Specific Personal Jurisdiction.

For specific personal jurisdiction to exist, "the *suit*" must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.* ("*Bristol-Meyers*"), 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)) (emphasis and alterations in original). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) ("*Goodyear*")) (alterations in original). As such, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the

very controversy that establishes jurisdiction." *Goodyear*, 131 S. Ct. at 2851 (internal quotations omitted).

There can be no dispute that specific jurisdiction over Stein Mart does not exist here. Neither Taylor nor Kyles alleges that she (1) purchased anything from Stein Mart in Delaware; (2) provided her personal information to Stein Mart in Delaware; or (3) was injured in Delaware. Indeed, Plaintiffs admit that the Data Incident impacted "Personal Information, including payment card information, entered while making online purchases on Stein Mart's website." [D.I. 1, ¶ 3.] Furthermore, both Plaintiffs admit that they are not residents of Delaware. *Id.* ¶¶ 11 (Taylor, resident of South Carolina), 23 (Kyles, resident of Missouri). Therefore, the reasonable inference to be drawn is that any purchases made by Plaintiffs were made in their home states. As such, this Court cannot exercise specific personal jurisdiction over Stein Mart.

### 2. Plaintiffs Have Not And Cannot Establish General Personal Jurisdiction.

"A court may assert general jurisdiction over foreign [] corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. For a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are, therefore, the paradigm bases for general jurisdiction. *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *Daimler AG*, 134 S. Ct. at 760). As such, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Malik*, 710 F. App'x at 564 (internal quotations omitted); *Daimler AG,* 134 S. Ct. at 762 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

Plaintiffs admit that Stein Mart "is incorporated in Florida, and its headquarters is located at 1200 Riverplace Boulevard, Jacksonville, Florida 33207-9046." [D.I. 1, ¶ 30.] Therefore, Plaintiffs must allege facts to establish that "this is the 'exceptional case' where, although [Stein Mart] is neither incorporated in nor has its principal place of business in [Delaware], that [Stein Mart] has operations in [Delaware] 'so substantial and of such a nature as to render [it] at home in that State' for purposes of general jurisdiction." *Malik*, 710 F. App'x at 564 (quoting *Daimler AG*, 134 S. Ct. at 761 n.19). Plaintiffs have failed to make such a showing.

Plaintiffs allege that this Court has personal jurisdiction over "Defendants" because (1) "they have sufficient minimum contacts with the state of Delaware;" and (2) they "intentionally avail themselves of the consumers and markets within the state through the promotion, marketing, and sale of their products and services." [D.I. ¶ 35.] Whether a defendant "intentionally avails" itself of the laws of a state is only relevant in evaluating specific personal jurisdiction, which this Court does not have. *See, e.g., Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (holding that "[i]f a defendant's activities are not so pervasive to subject them to general jurisdiction," courts must evaluate, among other things, whether a defendant "purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir. 1996) ("Specific jurisdiction … exists when the defendant purposely avails itself of the privilege of conducting activities within the forum state …" (internal quotations omitted)). "[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

Thus, the only allegation even relating to general personal jurisdiction over Stein Mart is a bald assertion of "sufficient minimum contacts," which is simply not enough to establish that Stein Mart is "at home" in Delaware. *Goodyear*, 564 U.S. at 919. Plaintiffs' claims against Stein Mart should be dismissed.

### B.    Plaintiffs Have Failed To State A Claim Against Stein Mart.

"[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). To meet its burden, the defendant must show that the "complaint's '[f]actual allegations [are not] enough to raise a right to relief above the speculative level.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (first alteration in original).

"In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the District Court must accept the plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor." *Mann v. Brenner*, 375 F. App'x 232, 235 (3d Cir. 2010). "Rule 8(a)(2)," however, "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Phillips*, 515 F.3d at 232; *see also Mann,* 375 F. App'x at 235. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks and citation omitted). For that reason, courts "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).

Plaintiffs here have not alleged "sufficient factual matter" to properly state a claim against Stein Mart. Therefore, Plaintiffs' complaint should be dismissed.

**1.**      **Plaintiffs Have Failed To Allege That They Suffered Any Actual Damages As A Result Of Stein Mart's Alleged Conduct And, Therefore, Have Failed To Adequately Plead Negligence, Negligence *Per Se*, and Breach Of Implied Contract Claims.**

Under Delaware law, to state a claim for negligence, negligence *per se*, and breach of implied contract, Plaintiffs must allege facts to demonstrate that they suffered damages as a result of the defendant's conduct. *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001) (for negligence, "one must allege that defendant owed plaintiff a duty of care; defendant breached that duty; and defendant's breach was the proximate cause of plaintiff's injury"); *Lechliter v. Delaware Dep't of Nat. Res. & Envtl. Control*, No. CV 7939-VCG, 2015 WL 9591587, at *17 (Del. Ch. Dec. 31, 2015), *aff'd*, 146 A.3d 358 (Del. 2016) (for negligence *per se*, the plaintiff must demonstrate "that the defendant's violation proximately caused his injury"); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct.), *aff'd*, 886 A.2d 1278 (Del. 2005) (for breach of contract, plaintiff must allege: "(1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages"). Neither plaintiff has made any allegation that she, personally, suffered any damages as a result of the Data Incident.

In fact, Plaintiffs make very few damage allegations specific to them. [*See* D.I. 1, ¶¶ 77, 82, 103, 114, 124, 131, 141, 154.] Of the two Plaintiffs, only one—Taylor—even alleges that she incurred fraudulent activity at all. [D.I. 1, ¶¶ 15-17.] Specifically, she alleges that in May 2018, she was made aware of charges on the debit card she used to make purchases on Stein Mart's website. *Id.* ¶¶ 15-16. However, Taylor also alleges, as she must, that Bank of America cancelled her credit card, mailed her a new card, and fully reimbursed her for the fraudulent activity. *Id.* ¶¶ 17, 19.

Several courts have held that fraudulent activity, without any out-of-pocket losses, does not constitute cognizable injury. For example, in *In re Hannaford Bros. Co. Customer Data Sec.*

*Breach Litig.* ("*In re Hannaford*"), 613 F. Supp. 2d 108, 167 (D. Me. 2009*), rev'd on other

grounds sub nom. Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011), the court held

that plaintiffs had suffered no cognizable injury where (1) the fraudulent charges they incurred

had been reimbursed; and (2) they had not incurred any out-of-pocket mitigation fees. Similarly,

in *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*, 903 F. Supp. 2d 942, 963

(S.D. Cal. 2012), the court held that, "without specific factual statements that Plaintiffs' Personal

Information has been misused, in the form of an open bank account, or un-reimbursed charges,"

the plaintiffs had not alleged cognizable injury. *See also Kuhns v. Scottrade, Inc.*, 868 F.3d 711,

718 (8th Cir. 2017) (affirming dismissal of claims where "no customer affected by the 2013 data

breach suffered fraud or identity theft that resulted in financial loss from use of their stolen PII");

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.,* No. 14-MD-2586 ADM/TNL, 2018

WL 1189327, at *13 (D. Minn. Mar. 7, 2018) ("*In re SuperValu*")  ("[A] cardholder's mere

allegation of an unauthorized charge, unaccompanied by an out-of-pocket loss, is insufficient to

state an actionable injury.").

Plaintiffs' allegations are similarly deficient. While Taylor alleges she incurred

fraudulent activity as a result of the Data Incident, she admits that she was fully reimbursed. [D.I.

1, ¶ 19.] And Taylor does not allege any other out-of-pocket expenses. Therefore, the reimbursed

fraudulent charges allegedly incurred by Taylor are insufficient to adequately allege injury.

Kyles does not allege to have suffered any fraudulent activity connected to any of her Personal

Information *See id.*  ¶¶ 23-28.

Plaintiffs do make some additional, damage-related allegations, but those allegations are

completely untethered to either Plaintiff and are undermined by the admissions and omissions

noted above. For example, Plaintiffs allege that they and "Class Members have suffered harm to

their personal property by way of their…payment cards, credit profiles, credit card balances, and bank accounts…being altered, depleted, reduced, compromised and/or accessible by unauthorized users." *Id.* ¶¶ 103, 114. But that is true for neither Plaintiff. Kyles does not allege any fraudulent activity involving her Personal Information, *see id.* ¶¶ 23-28, and Taylor admits that she was fully reimbursed and issued a new debit card. *Id.* ¶¶ 17, 19.

> Plaintiffs further generically allege that they and Class Members have:

> > suffered the loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; financial losses related to the purchases made at Stein Mart and/or through the use of Annex's services that Plaintiffs and Class members would not have made had they known of Defendants' careless approach to cyber security; lost control over the value of personal information; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Personal Information, entitling them to damages in an amount to be proven at trial.

*Id.* ¶ 103.

These allegations do not save the Complaint. First, boilerplate and generic allegations untethered to either Plaintiff may be disregarded. *See, e.g.*, *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011) (refusing to accept as true "boilerplate allegations mimicking the purported legal standards"); *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) ("[A] district court is not required to credit a 'bald assertion' when deciding a motion to dismiss…"). Second, none of these "injuries" regarding time or fraud can apply to Kyles because she does not allege to have suffered any fraudulent activity at all. *See id.* ¶¶ 23-28; *cf. Reilly v. Ceridian Corp.*, 664 F.3d 38, 44 (3d Cir. 2011) (dismissing similar claims under the much lower standard for injury-in-fact in the context of Article III standing because "Appellants have alleged no misuse, and therefore, no injury").

To the extent these "losses" pertain to Taylor, she could have specifically alleged them, as she did with regard to the alleged fraudulent charges. *See id.* ¶¶ 15-18. But Taylor chose not to do so. For example, she alleged no facts about the amount of time or money spent "obtaining protections against future identity theft," about the charges incurred for "exceeding credit and debit card limits and balances," or about the extent to which her credit score was "damaged." Her failure to do so further supports a finding that none of these allegations pertain to her. *See In re SuperValu,*, 2018 WL 1189327, at *12 (dismissing negligence claim for lack of cognizable injury because whether plaintiff was injured "is entirely within his knowledge and requires no discovery from Defendants, yet [plaintiff] has failed to allege this fact").

Further, even if either Plaintiff had made these specific allegations (which they did not), these allegations would still be insufficient. While the Third Circuit has yet to squarely address whether the loss in value of Plaintiffs' Personal Information and Plaintiffs' failure to receive the benefit of the bargain constitutes cognizable injuries in data breach cases, courts around the country have rejected them. Illustrative of this precedent is *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1178 (D. Minn. 2014), in which the Court rejected the plaintiffs claim that a portion of the price they paid was intended to pay for data security, stating that "[i]f Target charged credit- and debit-card customers more for their purchases to offset the costs of data security, Plaintiffs might have a plausible allegation in this regard. But the fact that all customers regardless of payment method pay the same price renders Plaintiffs' overcharge theory implausible."  The same is true here.  Plaintiffs do not allege that Stein Mart charged more for online purchases than for in-store purchases, or more for credit/debit card purchases than for cash purchases.

Likewise, the court in *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015), rejected the plaintiff's argument that diminution in value of information constitutes cognizable injury.  According to the *Corona* court, "[t]o the extent Plaintiffs' alleged injury relies on a theory that their PII constitutes property, those allegations also fail, as Plaintiffs have not provided any authority that an individual's personal identifying information has any compensable value in the economy at large." *Id.*  Still other courts have found that this diminution in value theory does not even suffice for Article III standing purposes where, as here, the plaintiff does not allege that she "attempted to sell [her] personal information, that [she] would do so in the future, or that [she was] foreclosed from entering into a value for value transaction relating to [her] PII" as a result of the compromise. *In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013) (same).

In sum, Plaintiffs (1) have not alleged that they suffered any actual out-of-pocket expenses as a result of the Data Incident; (2) rely on generic allegations unspecific to them; and (3) have asserted damage theories that have been consistently rejected by the courts. Their claims therefore should be dismissed.

## 2. The Economic Loss Doctrine Bars Plaintiffs' Negligence and Negligence Per Se Causes of Action.

To the extent that Kyles or Taylor attempt to allege any damages at all, they point only to economic damages, which cannot be recovered under their tort claims.  The economic loss doctrine "prohibits recovery in tort for losses unaccompanied by a bodily harm or a property damage." *Int'l Fid. Ins. Co. v. Mattes Elec., Inc.*, No. CIV.A. 99C-10-065WCC, 2002 WL 1400217, at *1 (Del. Super. Ct. June 27, 2002) (internal citations and quotations omitted). The

doctrine applies "to nearly any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or to property other than the bargained for item." *Id.; see also Brasby v. Morris*, No. C.A. 05C-10-022-RFS, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007) (dismissing negligence and negligence *per se* causes of action under economic loss doctrine).

The Third Circuit has, on at least two occasions, applied the doctrine to bar tort claims in data breach cases. In *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008), a bank sued the defendants alleging that their negligence resulted in a data breach requiring the bank to replace some of its customers' Visa cards and to reimburse its customers for fraudulent purchases. *Id.* at 176. The Third Circuit held that the economic loss doctrine barred the plaintiff's negligence claim, because these "damages" were purely economic. *Id.; see also Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 661 (3d Cir. 2016) ("Plaintiffs' negligence claim sound[ed] only in economic loss resulting from the fraudulent tax returns filed with their information," and, therefore, "the economic loss doctrine bar[red] their claim").

Other courts around the country have applied the economic loss doctrine to dismiss tort claims in data breach cases. *See, e.g., In re TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489, 499 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) (affirming dismissal of negligence claim in data breach class action under Massachusetts economic loss doctrine); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 973 (S.D. Cal. 2014), order corrected, No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014) (same under California economic loss doctrine); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011) (dismissing negligence and negligence *per se* claims in

data breach class action under Illinois economic loss doctrine); *In re SuperValu*, 2018 WL 1189327, at *13 (dismissing negligence claim in data breach class action under Illinois economic loss doctrine).

Because Plaintiffs attempt to allege only economic damages, their negligence and negligence *per se* claims should be dismissed.

### 3.    Plaintiffs' Unjust Enrichment Claim Fails.

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (internal quotations omitted). To state a claim for unjust enrichment, the plaintiff must allege "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Id.*

Plaintiffs allege that Stein Mart was unjustly enriched because "the monies for products that Plaintiffs….paid to Stein Mart…were supposed to be used by both Defendants, in part to pay for the administrative costs of reasonable data privacy and security practices and procedures." [D.I. 1, ¶ 130.] And because Stein Mart allegedly did not provide Plaintiffs with those "reasonable data privacy and security practices and procedures," Plaintiffs claim to have suffered damages "in an amount equal to the difference in value between the products and services offered with the reasonable data privacy and security practices and procedures…and the inadequate produces and services without reasonable data privacy and security practices and procedures…." *Id.* ¶ 131.

To the extent that Plaintiffs claim that some indeterminate part of the price they paid to Stein Mart for retail items went toward paying for security measures, "such a claim is too flimsy

to" establish any type of "impoverishment." *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.* ("*SAIC*"), 45 F. Supp. 3d 14, 30 (D.D.C. 2014). Plaintiffs purchased retail items, and they received retail items. They do not allege that these items were of poor quality or defective in any way. Instead, they improperly attempt to unilaterally insert into the purchase price of those products a charge for data security. *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claim because plaintiff "paid for food products… not…for a side order of data security and protection; it was merely incident to her food purchase"). Additionally, Plaintiffs do not allege how much that charge was or even how "the money they paid could have or would have bought a better policy with a more bullet-proof information-security regime." *SAIC*, 45 F. Supp. 3d at 30; *see also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) (dismissing unjust enrichment claim, in part, because the plaintiff did not allege that "any specific portion of his subscriber fee went toward data protection."). Nor could they, as Plaintiffs do not and cannot allege that Stein Mart charges a 'data security premium' for credit/debit purchases, as opposed to cash purchases.

Plaintiffs purchased retail items from Stein Mart, nothing more. And that is exactly what they received. Because Stein Mart's retention of the full purchase price is not unjust, Plaintiffs' unjust enrichment claim should be dismissed.

### 4. Kyles Has Failed to Allege That She Suffered an Ascertainable Loss of Money or Property as Required by the MMPA.

"The MMPA provides a private right of action to any person who sustains ascertainable loss in connection with the purchase or lease of merchandise as a result of certain practices declared unlawful." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017); *see also Pleasant v. Noble Fin. Corp.,* 54 F. Supp. 3d 1071, 1079 (W.D. Mo. 2014) ("[A] cognizable

MMPA action requires the plaintiff to prove that he suffered an ascertainable loss of money or property.").

These "ascertainable losses" must be "sufficiently definite and certain to support a monetary award." *Pleasant*, 54 F. Supp. 3d at 1079. And while the ascertainable loss requirement may be satisfied where it is "uncertain or difficult to qualify damages," the requirement is not satisfied where plaintiff claims "speculative, non-pecuniary harm or where he alleges no out-of-pocket costs." *In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, 2011 WL 4345446, at *2–3 (N.D.Cal. Sept. 15, 2011) (collecting cases).

Kyles' MMPA claim fails because she does not allege any non-speculative, pecuniary harm or out-of-pocket costs. As discussed above, she does not allege any fraudulent debit or credit card activity, and her other allegations are generic and unspecific to her. Kyles only alleges generically that she "incurred financial losses related to the purchases made at Stein Mart and/or through the use of Annex's services that Plaintiffs and Class members would not have made had they know of Defendants' careless approach to cybersecurity…." [D.I. 1, ¶ 77.]

Nor can Kyles prevail on a "benefit-of-the-bargain" theory under the MMPA. In *Kuhn*s, the plaintiff sued Scott Trade alleging, among other things, that Scott Trade violated the MMPA when hackers  acquired "personal identifying information…of over 4.6 million Scottrade customers, including plaintiff Matthew Kuhns…." *Kuhn*s, 868 F.3d at 713–14. The court dismissed the plaintiff's MMPA claim on the grounds that he had failed to allege "ascertainable pecuniary loss" in "relation to the purchase or lease of…merchandise." *Id.* at 719. According to the court, the plaintiff purchased brokerage services—not data security services—from Scott Trade. *Id.*

The same is true here. Kyles does not allege that she purchased anything from Stein

Mart—merchandise or "data security services."  All she alleges is that she received a letter from

Stein Mart notifying her of the Data Incident. [D.I. 1, ¶¶ 23-28.] Thus, like the plaintiff in *Kuhns*,

Kyles has failed to allege "ascertainable pecuniary loss" in "relation to the purchase or lease

of…merchandise" from Stein Mart. Her claim should be dismissed.

### 5.    Taylor's SCUTPA Claim Should Be Dismissed.

SCUTPA prohibits any "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce." S.C. Code Ann. § 39–5–20; *see also*

*Williams v. Quest Diagnostics, Inc.*, 353 F. Supp. 3d 432, 450 (D.S.C. 2018). "To maintain a

private cause of action under SCUTPA, a plaintiff must establish: (1) the defendant engaged in

an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of

the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in

by the defendant had an adverse impact on the public interest." *Bessinger v. Food Lion, Inc.*, 305

F. Supp. 2d 574, 579 (D.S.C. 2003), *aff'd sub nom. Bessinger v. Food Lion, LLC*, 115 F. App'x

636 (4th Cir. 2004). Taylor's allegations meet none of these elements.

First, Taylor does not allege sufficient facts to establish that Stein Mart engaged in an

unfair or deceptive act. "A trade practice is 'unfair' when it is offensive to public policy or when

it is immoral, unethical, or oppressive." *Williams*, 353 F. Supp. 3d at 450 (internal quotations

omitted). "An act is 'deceptive' when it has a tendency to deceive." *Health Promotion*

*Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 638 (2013) (internal quotations omitted).

Stein Mart's trade practices were not deceptive. Taylor alleges that Stein Mart

misrepresented material facts, in connection with the sale of products, by stating that (1) it

"would maintain adequate data privacy and security practices and procedures to safeguard Class

- 17 -

Members' Personal Information" and (2) it "did and would (or omitting that [it] would not) comply with the relevant federal and state laws pertaining to the privacy and security of Class Members' Personal Information." [D.I. 1, ¶ 146.] In support of these legal conclusions, Taylor cites to and quotes Stein Mart's "Secure Shopping Guarantee," which is posted on Stein Mart's website. *Id.* ¶ 40. But, contrary to Taylor's allegations, Stein Mart's website and "Secure Shopping Guarantee" were not misleading at all. Far from offering a "crime-proof" guaranty, the plain language of Stein Mart's "Secure Shopping Guarantee" expressly informed Taylor that there was a risk of credit card fraud associated with shopping on the website by stating: "Should any unauthorized charge appear on your credit card as a result of shopping with Steinmart.com, you must notify your credit card provider in accordance with its reporting rules and procedures." *Id.* ¶ 40. In the event of fraud, Stein Mart then offered Taylor a variety of free identity theft protection services to help remedy any fraud, should she qualify for them. *Id.*

The facts of this case are, therefore, similar to those of *Bahringer v. ADT Sec. Servs., Inc.*, 942 F. Supp. 2d 585 (D.S.C. 2013).  There, the plaintiff claimed ADT had violated SCUTPA because its advertising suggested that ADT guaranteed "fire protection services."  *Id.* at 594. The court disagreed, finding that "ADT marketing materials…neither promise to insure customers against all damages nor suggest that ADT accepts unlimited liability for customers' losses" and also that "[t]he guarantees listed on ADT's website do not relate to fire protection services, and the company's Home Security Systems web page does not suggest that its fire alarm systems are infallible."  That is exactly what Stein Mart did here—acknowledge the risks of fraud on credit cards used on its website and the fact that it was not and could not guarantee the absolute security of Taylor's information.

Second, Taylor fails to allege that she suffered an "ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice…." S.C. Code Ann. § 39-5-140(a). SCUTPA does not define the term "ascertainable loss of money or property," and Stein Mart is aware of no Third Circuit opinion interpreting that term in the context of SCUTPA. The Third Circuit has, however, interpreted this exact term as it is used in the New Jersey Consumer Fraud Act ("NJCFA"). Like SCUTPA, the NJCFA provides that "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act…may bring an action…in any court of competent jurisdiction." N.J. Stat. Ann. § 56:8-19. The Third Circuit defined an "ascertainable loss of moneys or property" as "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (internal quotations omitted).

As discussed in detail above, Taylor has not alleged that she incurred any out-of-pocket losses as a result of the Data Incident. *See supra* § IV(B)(1). Nor has she sufficiently alleged a "demonstration of loss in value that is quantifiable and measurable."

Finally, Taylor fails to allege sufficient facts to demonstrate that Stein Mart's conduct had "an adverse impact on the public interest," which "may be shown if the acts or practices have the potential for repetition." *Wright v. Craft*, 640 S.E.2d 486, 501 (S.C. Ct. App. 2006) (internal quotations omitted). The potential for repetition may be demonstrated in two ways: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *Id.*

Taylor does not allege that Stein Mart's data security practices had led it to fall victim to a cyberattack in the past or that it would again in the future. In fact, Taylor specifically alleges that (1) "Annex's system was accessed by unauthorized users who were able to capture customers'/consumers' Personal Information…entered on Stein Mart's website" and (2) Stein Mart "removed the Annex Cloud login feature." [D.I. 1, ¶¶ 43, 45.]  Therefore, Taylor's own allegations negate the possibility of any repetitive practice *by Stein Mart*. Taylor therefore has failed to state a claim for violation of SCUTPA.

**6.      Taylor's Class Allegations Under SCUTPA Must Be Dismissed.**

SCUTPA provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, ***but not in a representative capacity***, to recover actual damages." S.C. Code Ann. § 39-5-140.

Although, in the past, courts disagreed on whether SCUTPA's ban on class actions applied to actions filed in federal court, recent case law definitively demonstrates that it does. *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-CV-714, 2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013); *In re TD Bank, N.A.,* 150 F. Supp. 3d 593, 635 (D.S.C. 2015) ("The Court agrees with the *Stalvey* court's analysis and accordingly dismisses the plaintiffs' representative SCUTPA claims."); *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 727 (D.S.C. 2016) (same). If Taylor's SCUTPA claim survives, she cannot bring such a claim as a representative action.

## V.      <u>CONCLUSION</u>

For the foregoing reasons, Stein Mart respectfully requests that the Court grant its Motion to Dismiss, in its entirety and with prejudice.

Respectfully submitted,

**BAKER & HOSTETLER LLP**                    **DLA PIPER LLP (US)**


*/s/ Casie D. Collignon*                        */s/ Edward J. McAndrew*
Casie D. Collignon (admitted *Pro Hac Vice*)    Edward J. McAndrew (DE Bar No. 5638)
Matthew D. Pearson (admitted *Pro Hac Vice*)    1201 North Market Street, Suite 2100
1801 California Street, Suite 4400              Wilmington, DE  19801-3046
Denver, Colorado 80202-2662                    Telephone: (302) 468-5700
Telephone: (303) 861-0600                      Facsimile:   (302) 394-2341
Facsimile:  (303) 861-7805                      ed.mcandrew@dlapiper.com
ccollignon@bakerlaw.com
mpearson@bakerlaw.com


Dated:  May 10, 2019                            *Attorneys for Defendant Stein Mart, Inc.*

## CERTIFICATE OF SERVICE

I, Edward J. McAndrew, do hereby certify that on this 10th day of May 2019, I caused a true and correct copy of the foregoing **Defendant Stein Mart, Inc.'s Motion to Dismiss Class Action Complaint** to be filed with the Clerk of the Court using the CM/ECF system.  I further certify that I caused a copy to be served upon the following counsel below via CM/ECF:

Robert J. Kriner, Jr.
Scott M. Tucker
Tiffany J. Cramer
Vera G. Belger
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
2711 Centerville Rd, Ste. 201
Wilmington, DE 19808

Cornelius P. Dukelow
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103

Benjamin F. Johns
Mark B. DeSanto
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041

R. Stokes Nolte
Julie M. O'Dell
**WILKS, LUKOFF & BRACEGIRDLE,
LLC**
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805

Jon P. Kardassakis
**LEWIS BRISBOIS BISGAARD & SMITH
LLP**
633 West 5th Street, Suite 4000
Los Angeles, CA 90071

 */s/ Edward J. McAndrew*
Edward J. McAndrew (DE Bar No. 5638)