# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

<table>
<tr><td>
ANDE KYLES and DIANE TAYLOR, on behalf of themselves and all others similarly situated,<br><br>
      Plaintiffs,<br><br>
      v.<br><br>
STEIN MART, INC., a Florida corporation,<br><br>
      and<br><br>
SOCIAL ANNEX, INC. (d/b/a ANNEX CLOUD), a Delaware corporation,<br><br>
      Defendants.
</td><td>
CASE NO. 1:19-cv-00483-CFC<br><br><br>
CLASS ACTION
</td></tr>
</table>

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of March 19, 2020, is made and entered into by and among the following Settling Parties (as defined below): (i) Ande Kyles and Diane Taylor ("Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through their counsel at Chimicles Schwartz Kriner & Donaldson-Smith LLP and Abington Cole + Ellery (together, "Proposed Co-Lead Settlement Class Counsel" or "Class Counsel"); (ii) Stein Mart, Inc. ("Stein Mart"), by and through its counsel of record, Casie Collignon of Baker & Hostetler LLP and Edward J. McAndrew of DLA Piper; and (iii) Social Annex, Inc. (d/b/a Annex Cloud) ("Social Annex"), by and through its counsel of record, Jon Kardassakis of Lewis Brisbois Bisgaard & Smith LLP and R. Stokes Nolte of Wilks, Lukoff & Bracegirdle, LLC. The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I.    THE LITIGATION

Plaintiffs allege that in December 2017, Social Annex was the target of a criminal cyberattack in which third party criminals inserted unauthorized code into Social Annex's systems that operate its Social Login application ("Data Incident"). Plaintiffs allege that the unauthorized code was intended to allow the criminals to obtain personally identifiable information ("PII") and payment card information ("PCI") as customers were entering that information into the "check-out" webpages of retailers utilizing Social Annex's Social Login application. Stein Mart utilized Social Annex's Social Login application in 2017 and 2018.

After Social Annex notified Stein Mart that Stein Mart's customer's information may have been at risk at various times between December 28, 2017 and July 9, 2018, Stein Mart notified approximately 109,000 of its customers of the Data Incident. Subsequently, this lawsuit was filed asserting claims against Stein Mart and Social Annex (collectively, "Defendants") relating to the Security Incident (the "Litigation").

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Defendants and the Released Persons (as defined below) relating to the Data Incident, by and on behalf of Representative Plaintiffs and Settlement Class Members (as defined below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against Defendants and the Released Persons relating to the Security Incident.

## II.    CLAIMS OF REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLING

Plaintiffs believe the claims asserted in the Litigation, as set forth in the Complaint, have merit. Plaintiffs and Proposed Co-Lead Settlement Class Counsel recognize and acknowledge,

however, the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Proposed Co-Lead Settlement Class Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Defendants deny each and all of the claims and contentions alleged against them in the Litigation. Defendants deny all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Defendants have considered the uncertainty and risks inherent in any litigation. Defendants have, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, Proposed Co-Lead Settlement Class Counsel, and Defendants that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the

Settlement Class Members, except those Settlement Class Members who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1.    Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Agreement" or "Settlement Agreement" means this agreement.

1.2    "Valid Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the claims processing and/or Dispute Resolution process.

1.3    "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.4    "Claims Administrator" means Heffler Claims Group, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation.

1.5    "Claims Deadline" means the postmark and/or online submission deadline for valid claims pursuant to ¶ 2.1.

1.6    "Claims Referee" means Bennett Picker, Esquire of Stradley Ronon, 2005 Market Street, Suite 2600, Philadelphia, PA 19103.  If for any reason Mr. Picker becomes unable or unwilling to perform the services of the Claims Referee, Class Counsel, Counsel for Stein Mart and Counsel for Social Annex will jointly select a replacement Claims Referee to propose to the Court for approval.  If the Parties are unable to reach agreement, any Party may file a motion asking the Court to appoint a replacement Claims Referee.

1.7    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.8    "Court" means the United States District Court for the District of Delaware.

1.9    "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.10    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.11 herein have occurred and been met.

1.11    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review.  Notwithstanding the above, any order modifying or reversing any attorneys' fee award or incentive award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.12    "Judgment" means a judgment rendered by the Court.

1.13    "Long Notice" means the long form notice of settlement posted on the Settlement Website, substantially in the form as shown in Exhibit A to the Declaration of Benjamin F. Johns ("Johns Decl."), attached as Exhibit 2 to Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement.

1.14    "Objection Date" means the date by which Settlement Class Members must mail their objection to the Settlement for that objection to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.15    "Opt-Out Date" means the date by which Settlement Class Members must mail their requests to be excluded from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.16    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.17    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class.  The Settling Parties' proposed form of Preliminary Approval Order is attached as Exhibit 3 to Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement.

1.18    "Proposed Co-Lead Settlement Class Counsel," "Plaintiffs' Counsel" and "Class Counsel" means Benjamin F. Johns and Mark B. DeSanto of Chimicles Schwartz Kriner & Donaldson-Smith LLP, and Cornelius P. Dukelow of Abington Cole + Ellery.

1.19    "Related Entities" means Defendants' respective past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is

6

found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads nolo contendere to any such charge.

    1.20    "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein; violations of the South Carolina, Missouri, and similar state consumer protection statutes; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident and alleged theft of payment card data or other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation.  Released Claims shall not include the right of any

7

Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.21    "Released Persons" means Stein Mart; Social Annex; and their Related Entities and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers. "Released Persons" shall include Kibo Software, Inc. (which hosted Stein Mart's e-commerce platform), and each of its past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, assigns, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers.

1.22    "Plaintiffs" means Ande Kyles and Diane Taylor.

1.23    "Data Incident" means the compromise of Social Annex's Social Login Application through the insertion of malicious code, which may have allowed unauthorized third parties to access and capture end-user's payment card information as it was being inserted by the customer into the Stein Mart Website, https://www.steinmart.com,    that occurred from approximately December 28, 2017 until July 9, 2018.

1.24    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.25    "Settlement Class" means all persons who were notified by Stein Mart that they made purchases on Stein Mart's online store using their credit, debit, or other payment card on certain dates between December 28, 2017 and July 9, 2018. The Settlement Class specifically excludes: (i) Stein Mart, Social Annex, Kibo, Software, Inc., and their respective officers and

8

directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contender* to any such charge.

1.26    "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.27    "Settling Parties" means, collectively, Defendants and Plaintiffs, individually and on behalf of the Settlement Class.

1.28    "Short Notice" means the short notice of the proposed class action settlement, substantially in the forms as shown in the Johns Decl. Exhibit B (postcard notice for mail transmission) and Exhibit C (email notice). The Short Notice will direct recipients to the Settlement Website and inform Settlement Class Members, *inter alia*, of the Claims Deadline, the Opt-Out and Objection Deadline, and the date of the Final Fairness Hearing.

1.29    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs intend to and expressly shall have, and each of the other Settlement Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions,

9

rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80 *et seq.*, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.30    "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

**2.    Settlement Benefits**

2.1    <u>Expense Reimbursement</u>. All Settlement Class Members who submit a Valid Claim using the Claim Form are eligible for the following out-of-pocket expenses, not to exceed $220 per Settlement Class Member, that were incurred as a result of the Data Incident: (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft

fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) unreimbursed over-limit fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Data Incident), and text messages (if charged by the message and incurred solely as a result of the Data Incident); (ix) unreimbursed charges from banks or credit card companies; (x) postage; (xi) interest on payday loans due to card cancellation or due to over-limit situation incurred solely as a result of the Data Incident; (xii) costs of credit report(s) purchased by Settlement Class Members between September 7, 2018 and the date of the Preliminary Approval Order (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Data Incident); and (xii) costs of credit monitoring and identity theft protection purchased by Settlement Class Members between September 7, 2018 and the date on which notice of the settlement is emailed to the Settlement Class Members (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident and not for other purposes, and with proof of purchase). To receive reimbursement for any of the above-referenced out-of-pocket expenses, Settlement Class Members must submit documentation of such out-of-pocket expenses.

Settlement Class Members are also eligible to receive up to three hours of lost time spent dealing with replacement card issues or in reversing fraudulent charges (calculated at the rate of $15 per hour), but only if at least one full hour was spent, and only if the Settlement Class Member attests on the Claim Form to the time spent.

Settlement Class Members seeking reimbursement under this ¶ 2.1 must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before the 90th day after the deadline for the completion of mailing notice to Settlement Class Members

11

as set forth in ¶ 3.2. The notice to the class will specify this deadline and other relevant dates described herein. The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. Notarization shall not be required. The Settlement Class Member must submit reasonable documentation that the out-of-pocket expenses and charges claimed were both actually incurred and plausibly arose from the Data Incident. Failure to provide supporting documentation of the out-of-pocket expenses referenced above, as requested on the Claim Form shall result in denial of a claim. No documentation is needed for lost-time expenses. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.4.

  2.2  <u>Other Extraordinary Expense Reimbursement</u>. Defendants shall reimburse, as provided for below, each Settlement Class Member in the amount of his or her Valid Claim, but not to exceed $4,000 per claim (and only one claim per Settlement Class Member), for a monetary out-of-pocket loss that is claimed by the Settlement Class Member to have occurred more likely than not as a result of the Data Incident, regardless of whether said Settlement Class Member elects to make a claim for any other benefit available under this Settlement Agreement, and further that: (a) it is an actual, documented, and unreimbursed monetary loss; (b) was more likely than not caused by the Data Incident; (c) occurred during the time period from December 28, 2017 through and including the end of the applicable claims period *(see ¶ 2.1, infra);* (d) is not already covered by one or more of the categories in ¶ 2.1, and (e) the claimant made reasonable efforts to avoid or seek reimbursement for the loss including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance as required

under ¶ 2.2.2.  Settlement Class Members with claims under this paragraph may also submit claims for benefits under ¶ 2.1.

2.2.1    Claimants seeking reimbursement for expenses or losses described in ¶ 2.2 must complete and submit the appropriate section of the Claim Form to the Claims Administrator, together with the necessary documentation.

2.2.2    Claimants must exhaust all existing credit monitoring insurance and identity theft insurance, before Defendants are responsible for any expenses claimed pursuant to ¶ 2.2 of this Settlement Agreement.  Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.  To be approved, claims for extraordinary expenses must be complete and submitted to the Claims Administrator on or before the Claims Deadline.  No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.

2.3    <u>Confirmatory Discovery</u>.    Social Annex and Stein Mart have provided confirmatory discovery to Plaintiffs' Counsel  sufficient to verify that the following measures relating to Social Annex's Social Login application are presently in place or are planned for the next calendar year:

1)    Social Annex has hired a full-time Chief Technology Officer who is specifically responsible for overseeing information security compliance;

2)    Social Annex has written information security policies addressing the security of its environment; and

13

3)      Social Annex has implemented new information security training for its employees that all Social Annex employees must complete on an annual basis, if not more frequently.

2.4      Dispute Resolution for Claims.

2.4.1   The Claims Administrator, in his sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the expenses described in ¶ 2.1 or ¶ 2.2; and (3) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the claimed losses as a result of the Data Incident. The Claims Administrator may, at any time, request from the claimant, in writing, additional information as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.,* documentation requested on the Claim Form, information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.  For any Claims for Extraordinary Expenses, the Claims Administrator's initial review will be limited to a determination of whether the Claim is complete and plausible. For any such Claims that the Claims Administrator determines to be implausible, the Claims Administrator will submit those Claims to the Settling Parties (one Plaintiffs' lawyer shall be designated to fill this role for all Plaintiffs). If the Settling Parties do not agree with the Claimant's Claim, after meeting and conferring, then the Claim shall be referred to the Claims Referee for resolution.

2.4.2   Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid,

14

the Claims Administrator shall request additional information and give the claimant thirty (30) days to cure the defect before rejecting the claim.  Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes later.  In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than one year from the Effective Date.  If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.4.3    Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim.  If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is facially valid, then the claim shall be paid.  If the claim is not facially valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Settlement Administrator may reject the claim without any further action.  If the claim is rejected in whole or in part, for other reasons, then the claim shall be referred to the Claims Referee.

2.4.4    Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator.  If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination.  If the claimant approves the final determination, then the approved amount

shall be the amount to be paid.  If the claimant does not approve the final determination within thirty (30) days, then the dispute will be submitted to the Claims Referee within an additional ten (10) days.

2.4.5  If any dispute is submitted to the Claims Referee, the Claims Referee may approve the Claims Administrator's determination by making a ruling within fifteen (15) days. The Claims Referee may make any other final determination of the dispute or request further supplementation of a claim within thirty (30) days.  The Claims Referee's determination shall be based on whether the Claims Referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Data Incident.  The Claims Referee shall have the power to approve a claim in full or in part.  The Claims Referee's decision will be final and non-appealable.  Any claimant referred to the Claims Referee shall reasonably cooperate with the Claims Referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the Claims Referee to verify the claim through third party sources, and failure to cooperate shall be grounds for denial of the claim in full.  The Claims Referee shall make a final decision within thirty (30) days of receipt of all supplemental information requested.

2.5    Settlement Expenses.  All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of Dispute Resolution described in ¶ 2.4, shall be paid by Defendants.

2.6    Settlement Class Certification.  The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and

the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

## 3.    Order of Preliminary Approval and Publishing of Notice of Fairness Hearing

3.1.    As soon as practicable after the execution of the Settlement Agreement (and no later than five days thereafter), Proposed Co-Lead Settlement Class Counsel and counsel for Defendants shall jointly submit this Settlement Agreement to the Court, and Plaintiffs' counsel will file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form attached as Exhibit 3 to Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement, or an order substantially similar to such form in both terms and cost, requesting, *inter alia:*

a)    certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.6;

b)    preliminary approval of the Settlement Agreement as set forth herein;

c)    appointment of Proposed Co-Lead Settlement Class Counsel as Co-Lead Settlement Class Counsel;

d)    appointment of Plaintiffs as Class Representatives;

e)    approval of a customary form of Short Notice to be emailed or, if emailing is unsuccessful, mailed to Settlement Class Members in a form substantially similar to those attached as Exhibits B and C to the Johns Decl.;

17

f)      approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to the one attached to the Johns Decl. as Exhibit A, which, together with the Short Notice, shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing; and

g)      appointment of Heffler Claims Group as the Claims Administrator.

The Short Notices and Long Notice have been reviewed and approved by the Claims Administrator but may be revised as agreed upon by the Settling Parties prior to submission to the Court for approval.

3.2      Defendants shall pay for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration.  Attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel, and incentive awards to Class Representatives, as approved by the Court, shall be paid by Defendants as set forth in ¶ 7 below.  Notice shall be provided to Settlement Class Members by the Claims Administrator as follows:

a)      *Class Member Information*: No later than ten (10) days after entry of the Preliminary Approval Order, Stein Mart shall provide the Claims Administrator with the name, email address, and physical address of each Settlement Class Member (collectively, "Class Member Information") that Stein Mart possesses. Stein Mart warrants and represents that it will provide the most current Class

18

Member Information for all Class Members as such information is contained in its records.

b)      The Class Member Information and its contents shall be used by the Claims Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the Settlement as provided in this Agreement, or provide all data and information in its possession to the Settling Parties upon request, the Claims Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

c)      *Settlement Website:* Prior to the dissemination of the Class Notice, the Claims Administrator shall establish the Settlement Website www._____.com - that will inform Settlement Class Members of the terms of this Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Form Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Agreement; (v) the operative Class Action Complaint filed in the Litigation; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically.

d)      *Short Notice:* Within thirty (30) days after the entry of the Preliminary Approval Order and to be substantially completed not later than forty-five (45) days after entry of the Preliminary Approval Order, and subject to the requirements of this

19

Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class as follows:

- via email to the email addresses provided to Stein Mart when the Settlement Class Members conducted transactions with Stein Mart;

- should any Short Notice be determined to be undeliverable via email (the Claims Administrator will track delivered and undelivered emails) or, in circumstances where a working email address is not available, via mail to the postal address provided when the Settlement Class Members conducted transactions with Stein Mart. Before any mailing under this Paragraph occurs, the Claims Administrator shall run the postal addresses of Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

- in the event that a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Summary Notice;

- in the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out and Objection Deadline, a Summary Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding

20

address, the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Class Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing.

e)    Publishing, on or before the Notice Date, the Short Notice, Claim Form, and Long Notice on the Settlement Website (www._____.com), as specified in the Preliminary Approval Order, and maintaining and updating the website throughout the claim period;

f)    A toll-free help line shall be made available to provide Settlement Class Members with additional information about the settlement.  The Claims Administrator also will provide copies of the forms of Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request; and

g)    Contemporaneously with seeking Final Approval of the Settlement, Proposed Co-Lead Settlement Class Counsel and Defendants shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

3.3    The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval.  The Notice Program shall commence within thirty (30) days after entry of the

Preliminary Approval Order and shall be completed within forty-five (45) days after entry of the Preliminary Approval Order.

3.4    Proposed Co-Lead Settlement Class Counsel and Defendants' counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.5    Defendants will also cause the Claims Administrator to provide (at Defendants' expense) notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

**4.    Opt-Out Procedures**

4.1    Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator.  The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked no later than ninety (90) days after the date on which the Notice Program commences pursuant to ¶ 3.2.

4.2    All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3    In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than 150 timely and valid Opt-Outs (exclusions) submitted, Defendants may, by notifying Proposed Co-Lead Settlement Class Counsel and the Court in

writing, void this Settlement Agreement.  If Defendants void the Settlement Agreement pursuant to this paragraph, Defendants shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel and incentive awards and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

### 5.     Objection Procedures

5.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date.  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years.  To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court, located at J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, DE 19801-3555, and contain the case name and docket number (*Kyles, et al. v. Stein Mart, Inc., et al.*), Case No. 1:19-cv-00483-CFC, no later than ninety (90) days from the

date on which the Notice Program commences pursuant to ¶ 3.2, and served concurrently therewith upon Proposed Co-Lead Settlement Class Counsel, Benjamin F. Johns, Chimicles Schwartz Kriner & Donaldson-Smith LLP, 361 W. Lancaster Avenue, Haverford, Pennsylvania, 19041; counsel for Stein Mart, Casie D. Collignon, Baker & Hostetler, LLP, 1801 California Street, Suite 4400, Denver, Colorado 80202-2662; and counsel for Social Annex, Jon Kardassakis, Lewis Brisbois Bisgaard & Smith LLP, 633 W. 5th Street, Suite 4000, Los Angeles, CA 90071.

5.2    Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**6.    Releases**

6.1    Upon the Effective Date, each Settlement Class Member, including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing,

24

prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

6.2    Upon the Effective Date, Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement.  Any other claims or defenses Defendants may have against such Persons including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

6.3    Notwithstanding any term herein, neither Defendants, nor their Related Parties, shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel.

**7.    Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Incentive Award to Representative Plaintiffs**

7.1    The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive award to Plaintiffs, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that Defendants would pay reasonable attorneys' fees, costs, expenses, and an incentive award to Plaintiffs as may be agreed

25

to by Defendants and Proposed Co-Lead Settlement Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court. Defendants and Proposed Co-Lead Settlement Class Counsel then negotiated and agreed to the payment described in ¶ 7.2.

7.2    Defendants have agreed to pay, subject to Court approval, the amount of $300,000.00 to Proposed Co-Lead Settlement Class Counsel for attorneys' fees, inclusive of any costs and expenses of the Litigation. Proposed Co-Lead Settlement Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' Counsel.

7.3     Subject to Court approval, Defendants have agreed to pay an incentive award in the amount of $2,500 to each of the Plaintiffs.

7.4    If awarded by the Court, Defendants shall pay the attorneys' fees, costs, expenses, and incentive awards to Plaintiffs, as set forth above in ¶¶ 7.2, 7.3, and 7.4, within 30 days after the Effective Date. Proposed Co-Lead Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel and incentive award to Plaintiffs consistent with ¶¶ 7.2 and 7.3.

7.5    The amount(s) of any award of attorneys' fees, costs, and expenses, and the incentive award to Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. These payments will not in any way reduce the consideration being made available to the Settlement Class as described herein. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or incentive award ordered by the Court to Proposed Co-Lead Settlement Class Counsel or

Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

### 8.    Administration of Claims

8.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶¶ 2.1 and 2.2.  Proposed Co-Lead Settlement Class Counsel and Defendants shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate.  The Claims Administrator's and Claims Referee's, as applicable, determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the dispute resolution process set forth in ¶ 2.4.  All claims agreed to be paid in full by Defendants shall be deemed valid.

8.2    Checks for Valid Claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later.

8.3    All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4    No Person shall have any claim against the Claims Administrator, Claims Referee, Defendants, Proposed Co-Lead Settlement Class Counsel, Plaintiffs, Plaintiffs' Counsel, and/or Defendants' counsel based on distributions of benefits to Settlement Class Members.

**9.**      **Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1      The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)      the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)      Defendants have not exercised their option to terminate the Settlement Agreement pursuant to ¶ 4.3;

c)      the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)      the Judgment has become Final, as defined in ¶ 1.11.

9.2      If all conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Proposed Co-Lead Settlement Class Counsel and Defendants' counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3      Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Co-Lead Settlement Class Counsel and to Defendants' counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4      In the event that the Settlement Agreement or the releases set forth in paragraphs 6.1, 6.2, and 6.3 above are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement

28

shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or incentive awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Defendants shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, Claims Administration, and Dispute Resolution pursuant to ¶ 2.4 above and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

### 10.    Miscellaneous Provisions

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum

29

that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth herein.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.    Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    All documents and materials, if any, provided by Social Annex in confirmatory discovery pursuant to ¶ 2.3 shall be treated as confidential and returned to Social Annex within sixty (60) days of the Effective Date.  Such documents and materials, if any, may not be used for any purpose other than confirmatory discovery in this Litigation.

10.5    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.6    This Agreement contains the entire understanding among Stein Mart, Social Annex, and Plaintiffs regarding the payment of the *Kyles* Action settlement and supersedes all

previous negotiations, agreements, commitments, understandings, and writings among Stein Mart, Social Annex, and Plaintiffs in connection with the payment of the *Kyles* Action settlement. Except as otherwise provided herein, each party shall bear its own costs. This Agreement supersedes all previous agreements made among Stein Mart, Social Annex, and Plaintiffs. Any agreements reached between Stein Mart and Social Annex, or between Stein Mart, Social Annex, and any third party, are expressly excluded from this provision.

10.7    Proposed Co-Lead Settlement Class Counsel, on behalf of the Settlement Class, is expressly authorized by Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.8    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.9    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

10.10    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.11    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.12    As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.13    All dollar amounts are in United States dollars (USD).

10.14    Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits.  All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance.  If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and Defendants shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶ 2.1 or ¶ 2.2 or any other type of monetary relief.  The same provisions shall apply to any re-issued check.  For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.15    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

| Proposed Co-Lead Settlement Class Counsel | Counsel for Stein Mart, Inc. and Duly Authorized Signatory |
|---|---|
| **CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP** | **DLA PIPER LLP**<br><br>By:    */s/ Edward J. McAndrew* |

32

By:     */s/ Tiffany J. Cramer*
Tiffany J. Cramer ((Del. Bar No. 4998)
CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP
2711 Centerville Road, Suite 201
Wilmington, DE 19801
(302) 656-2500
tjc@chimicles.com

Benjamin F. Johns (*pro hac vice*)
Mark B. DeSanto (*pro hac vice*)
CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
bfj@chimicles.com
mbd@chimicles.com
Cornelius P. Dukelow (*pro hac vice*)
Oklahoma Bar No. 19086
ABINGTON COLE + ELLERY
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (telephone & facsimile)
cdukelow@abingtonlaw.com

*Attorneys for Plaintiffs*
*Ande Kyles and Diane Taylor*

Edward J. McAndrew
DLA PIPER LLP
Delaware Bar No. 5638
1201 N. Market Street, 21st Floor
Wilmington, DE 19801
(302) 468-5685
ed.mcandrew@dlapiper.com

Casie D. Collignon (*pro hac vice*)
Matthew D. Pearson (*pro hac vice*)
BAKER & HOSTETLER, LLP
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
(303) 764-0600
ccollignon@bakerlaw.com
mpearson@bakerlaw.com

*Attorneys for Defendant*
*Stein Mart, Inc.*

Counsel for Social Annex, Inc. (d/b/a Cloud
Annex) and Duly Authorized Signatory

**WILKS, LUKOFF & BRACEGIRDLE,
LLC**

By:     */s/ R. Stokes Nolte*
R. Stokes Nolte (DE Bar No. 2301)
Julie M. O'Dell (DE Bar No. 6191)
WILKS, LUKOFF & BRACEGIRDLE, LLC
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805
Tel: (302) 225-0850
Fax: (302) 225-0851
rnolte@wlblaw.com
jodell@wlblaw.com

Jon Kardassakis (*pro hac vice*)
LEWIS BRISBOIS BISGAARD & SMITH
LLP
633 West 5th St., Suite 4000
Los Angeles, California 90071
Tel: (213) 250-1800
Fax: (213) 250-7900
Jon.kardassakis@lewisbrisbois.com

*Attorneys for Defendant*

33

*Social Annex, Inc. (d/b/a Cloud Annex)*